CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 25 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMANDA ELLEN SEAGLE, | Civil Action No. 7:15CV00616 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Amanda Ellen Seagle, was born on August 15, 1975. While Ms. Seagle did not complete high school, she later earned a GED. Plaintiff has worked as a home care attendant, receptionist, and sales associate. She last worked on a regular and sustained basis in 2010. On March 27, 2012, Ms. Seagle filed applications for disability insurance benefits and supplemental security income benefits. She alleged that she became disabled for all forms of substantial gainful employment on April 30, 2010, due to scoliosis; fibroid tumors; panic attacks; fistula; and blood clotting disorder. Plaintiff now maintains that she has remained disabled to the

present time. As to her application for disability insurance benefits, the record reveals that Ms. Seagle met the insured status requirements of the Act through the fourth quarter of 2012, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before December 31, 2012. See generally, 42 U.S.C. § 423(a).

Plaintiff's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 1, 2014, the Law Judge also determined that Ms. Seagle is not disabled. The Law Judge found that plaintiff suffers from several severe impairments, including recurrent perirectal abscess; bifid uterus with pelvic dysfunction; irritable bowel syndrome; anemia; scoliosis; obesity; history of superficial thrombophlebitis; depression; and anxiety. (TR 21-22). Because of these impairments, the Law Judge ruled that Ms. Seagle is disabled for all her past relevant work roles. (TR 31). However, the Law Judge found that plaintiff remains capable of performing a limited range of light work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and carry no more than 20 pounds occasionally and 10 pounds frequently; stand and walk for no more than 6 hours in an 8-hour workday; sit for no more than 6 hours in an 8-hour workday; frequently balance and climb ramps and stairs; occasionally kneel, crawl, stoop, and crouch; should avoid concentrated exposure to extreme temperatures, hazardous machinery, unprotected heights, work on vibrating surfaces, and climbing of ladders, ropes, and scaffolds. She is able to understand, remember, and carry out simple instructions in repetitive, unskilled work.

(TR 24). Given such a residual functional capacity, and after considering Ms. Seagle's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge held that plaintiff remains capable of performing several specific light work roles existing in significant number in the national economy. (TR 32). Accordingly, the Law Judge ultimately concluded that Ms. Seagle is not disabled, and that she is not entitled to benefits under either federal program. See generally, 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Seagle has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's denial of plaintiff's claims for benefits is fully supported by substantial evidence. Nevertheless, the court believes that the Law Judge properly resolved many of the critical conflicts in the evidence. As set forth above, Ms. Seagle experiences a variety of physical and emotional problems. Most of the medical treatment in this case has been associated with plaintiff's recurrent

perirectal abscess, bifid uterus with associated pelvic dysfunction, and circulatory problems. Dr. Matthew S. Kaatz, a family practitioner, has provided most of plaintiff's direct patient care. On March 28, 2014, Dr. Kaatz reported as follows:

> Ms. Amanda Seagle has been a patient of mine for the past four years during which time I have tended to her chronic pain related to bifid uterus with pelvic dysfunction. Chronic pain has resulted in her anxiety and depression as well as her inability to work. I have seen her intermittently in my office as well as at the free clinic where she has remained compliant with her treatment regimen, which includes a multitude of psychoactive medicines as well as minimally addictive pain medicines, which have failed to do the job at times. She has a rather unique medical condition causing her pelvic pain, which in my opinion, warrants hysterectomy. However, she has no insurance and has been at the mercy of the doctors at UVa who are resistant to pursuing that option at this point, which in my opinion has only prolonged her illness and subsequent disability. I believe her to be totally and permanently disabled since I initially started treating her symptoms back in 2010 and I respectfully request that you take this into consideration as you consider her case.

(TR 425). The Administrative Law Judge declined to accept the treating physician's medical opinion as to plaintiff's disability. The Law Judge noted that Dr. Kaatz's clinical notes, as well as the reports from specialists who saw Ms. Seagle at Dr. Kaatz's behest, simply do not support the notion that her physical problems, considered singly or in combination, are so severe as to prevent performance of lighter forms of work activity. The court believes that this determination is supported by substantial evidence.

The simple fact is that while Ms. Seagle experiences difficulties during the periods of recurrent perirectal abscess, and while she does have continuing pelvic dysfunction, Dr. Kaatz has not documented clinical findings which support the proposition that Ms. Seagle has been totally disabled for a period of requisite duration. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). Perhaps more to the point, the specialists who have seen Ms. Seagle at the University of Virginia

4

Medical Center do not support Dr. Kaatz's assessment as to the severity or immediacy of plaintiff's uterine anomaly. While plaintiff underwent a vaginal septoplasty and hysterectomy as recommended both by Dr. Kaatz and the doctors at the University of Virginia Medical Center, Ms. Seagle has continued to experience gynecological problems. However, the court is constrained to agree that there is no objective evidence to support the assertion that the chronic pain associated with plaintiff's pelvic dysfunction can be expected to be so severe as to render her disabled for all forms of work, and certainly not for a continuous period of a least twelve months. Moreover, given the scarcity of the remaining medical evidence, as well as the clinical reports suggesting that plaintiff's rectal abscess is subject to reasonable medical control, the court must agree that there is substantial evidence to support the Commissioner's finding that plaintiff's physical problems are not so severe as to render her incapable of performing a limited range of work activity.

The Law Judge's treatment of plaintiff's emotional impairments raises a different issue. Dr. Kaatz has consistently reported that Ms. Seagle suffers from anxiety and depression which are accentuated by her chronic pain disorder. Dr. Kaatz has treated plaintiff with mood altering medications as well as pain medications. As recognized by the Administrative Law Judge, Dr. Kaatz has reported on several occasions that plaintiff has difficulty thinking and concentrating. (TR 327-31). Based on input from Dr. Kaatz, the Administrative Law Judge determined to accord "little weight" to reports from nonexamining state agency psychological consultants suggesting that plaintiff's mental impairments are nonsevere. (TR 31). Instead, as indicated above, the Law Judge found that Ms. Seagle experiences severe impairments in terms of

5

depression and anxiety. (TR 21-22). As for the functional impact associated with these severe impairments, the Law Judge commented as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. She has reported that she follows written instructions better than spoken instructions but sometimes has to go over them a few times, and Dr. Kaatz wrote that she has difficulty thinking or concentrating. (Ex. 5E; Ex. 8E; Ex. 4F at 2.) However, the claimant's very conservative history of mental health treatment, with only prescribed mental medications sometimes noted from her primary care provider, supports only moderate limitation in concentration, persistence, or pace.

(TR 23).

The difficulty in this case is that in formulating a hypothetical question for the vocational expert, the Administrative Law Judge did not attempt to account for the finding of "moderate limitation in concentration, persistence, or pace." Despite having found that Ms. Seagle experiences severe impairments based on anxiety and depression, which result in moderate limitations in concentration, persistence, and pace, the Law Judge asked the vocational expert only to consider that Ms. Seagle is limited to simple tasks involving repetitive, unskilled work. (TR 58). Thus, in opining that Ms. Seagle could be expected to do line work, such as assembler, packer, and inspector/sorter, the vocational expert was not asked to consider the significance of a moderate limitation in concentration, persistence, and pace. The Law Judge relied on the testimony of the vocational expert in determining that plaintiff retains sufficient functional capacity for several specific work roles existing in significant number in the national economy. (TR 33).

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

In her opinion, the Administrative Law Judge did not undertake to explain her reasoning in omitting findings of moderate limitation in concentration, persistence, and pace in the assessment of plaintiff's residual functional capacity, and in the formulation of the hypothetical question for the vocational expert. The court notes that the Commissioner sometimes argues that such moderate limitations are subsumed under a finding that a claimant is capable of performing only simple, routine, repetitive tasks. However, the court does not believe that the hypothetical question, which assumed that plaintiff can perform unskilled work which requires nothing more than the execution of simple job instructions, was sufficient to alert the vocational expert to the existence of moderate limitations in plaintiff's concentration, work persistence, and attendance to task. Indeed, the court believes that consideration of such limitations would be especially important in assessing capacity for production work.

As noted by the United States Court of Appeals for the Tenth Circuit in <u>Wiederholt v. Barnhart</u>, 121 F. App'x 833, 839 (10th Cir. 2005):

> The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed. Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments. (citations omitted).

7

See also Millhouse v. Astrue, 2009 WL 763740, at *3 (M.D. Fla. March 23, 2009) (stating that "moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work"); Chavanu v. Astrue, 2012 WL 4336205, at *9 (M.D. Fla. September 21, 2012) ( noting that "[s]everal circuits have found that restricting [a] VE's inquiry to simple, routine, or repetitive tasks, or unskilled work does not accounts [sic] for a plaintiff's moderate deficiencies in concentration, persistence, or pace," and citing to these cases); and Sexton v. Colvin, 21 F.Supp.2d 639, 642-3 (W.D.Va. May 19, 2014) (a limitation to simple, unskilled work does not necessarily imply, or take into account, moderate limitations in concentration, persistence, or pace).

In Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) the United States Court of Appeals for the Fourth Circuit recently reached a similar conclusion:

> In addition, we agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work.' Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

Id. at 638.

In summary, the court concludes that the critical hypothetical question posed by the Administrative Law Judge, excluding plaintiff's moderate limitations in concentration, persistence, and pace, was not consistent with the evidence of record, or the Law Judge's explicit findings. Accordingly, the court will remand the case to the Commissioner for further development and consideration. If the Commissioner is unable to decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental

8

administrative hearing, at which a comprehensive hypothetical question can be put to a qualified vocational expert. Upon remand, both sides will be allowed to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

DATED: This 25th day of July, 2016.

                                                    /s/ Conrad
                                       Chief United States District Judge